Good morning everyone. Our first case today is United States v. Anderson, appeal number 23-1375. Ms. Moreno. Thank you, your honors, and may it please the court. This is a case about procedural reasonableness. Mr. Anderson's claim is that the district court did not adequately explain its sentencing decision, and although courts certainly have a great deal of discretion and sentencing discretion in revocation cases, that discretion is not absolute, and it certainly does not dispose of the requirement that the court give adequate explanation of its sentencing decision to allow for adequate review. That duty is even more critical in situations like this case, where the court not only varied from the policy statements contained in Chapter 7 of the guidelines, but it did so to such a significant degree. The court here imposed a sentence that doubled the top end of that advisory range. But of course it's going to look much bigger if the top of the range is nine months, and then you go to 18, as opposed to, you say, double, and if it had been 100 to 200, that would have, of course, been a much bigger difference. Why isn't it enough for the judge to say, I mean, he's clearly not persuaded by your take on Mr. Anderson, and he feels that Mr. Anderson is incorrigible, actually. So he wants to give him some more prison time, and thinks that essentially perpetual supervised release, 30 years as opposed to 20, is what he needs, but I'm not sure how much explanation he needed beyond what he said. Your Honor, to the first point about why is that nine-month difference actually all that significant, and the reason is because we look relative to the kind of scale of sentencing. Surely, we're not talking about years, but that's because the statutory maximum here was 24 months. Sure, sure. And so in that context, it is a big portion of that statutory maximum of possible sentences that was imposed here, and it is double the amount that was at the top end of that range. And I do think this court has kind of explained a little bit about the perilous ground that we're on when we're talking about, well, it's only three months, it's only four months. There's a little bit of discussion in that in the Bolting House decision, where this court, the issue there was a matter of just three months difference. The court imposed a 24-month sentence, and the Seventh Circuit said it had to have explained why it landed on the top end, 24 months, versus the lower end of the guideline range there was 21 months. So even that three-month difference was enough for this court to find a procedural error in the court's failure to explain. And so I think surely here, where we have, in terms of scale, a doubling of the guidelines, that triggered the requirement of not just some explanation, but a more fulsome explanation.  What more should the judge have said? Certainly, Your Honor. I think one way to conceptualize of the need to give an explanation of a sentence is that each sentence kind of has a benchmark of how much explanation is required. And that benchmark is determined by how far that sentence deviates from the policy statements. So a sentence that is within the policy statements contained in the Sentencing Commission's Chapter 7 of the Guidelines, that sentence, there's not that much gap to fill.  Where the sentence varies to such a high degree as we have here, there's more room, there's more gap to fill. And there are two categories of kind of analysis that the court can use to fill that gap. On the one hand, it can explain why it varied so greatly by talking about policy disagreements it may have with the Sentencing Commission, by talking about factors that aren't considered. Didn't the judge do that here by, I mean, wasn't it enough for the judge to say here, we tried this once and it failed? No, Your Honor. And the reason is because that was essentially taking the first revocation as, and the sentence on the first revocation, as a de facto mandatory minimum. But that's not what he says. I mean, I hate to put words in the judge's mouth. He says, even more egregious, the defendant was revoked during the first term for essentially the same violations. And it's the repetition of the behavior. He says, is that what causes me to believe that anything below what Judge Crabb imposed, and then he kind of alludes to the fact that the guidelines suggest something below what Judge Crabb had imposed, is probably not appropriate here. He's not setting it in stone. But he says, but I haven't decided. I'm willing to hear further argument. But he's zeroing in on the fact that it's the very same violations. He actually mentions that when they're committed is troublesome to him as well. The damaging nature of these activities and so on. I mean, he tells you quite a bit. And Your Honor, I think the fact that this was such a significant deviation from what was recommended in the guidelines required a little bit more in terms of a more specific grappling with the 3553A factors, or alternatively or in combination, a more specific grappling with why there was a deviation from the guidelines. And the reason that I say that the court was essentially taking the first revocation as a de facto minimum is that the reasoning that the court applies is almost a copy and paste of Judge Crabb's order. And although the violations do seem similar at first blush, there was some pretty significant differences in the facts that outlined the first violation from the second revocation. I think the first revocation, just to briefly touch, and I don't want to get too into the weeds, it had to do with Mr. Anderson having an unauthorized cell phone, an unauthorized laptop, and actively seeking illustrations and writings about child exploitation. And certainly, one can very easily understand the concerns that Judge Crabb had in that case, and the reasons that she may have varied so highly from the guidelines. The second revocation, however, the forensic reports contained in the probation officer's violation report confirmed that far from actively seeking this material, Mr. Anderson had not accessed any of that material on the two flash drives during his period of supervision the second time around. And certainly had not accessed those materials since his sex offender treatment had restarted in September of 2022. I think that's your critical point. I mean, you've been arguing that he, with some evidence in the record, that he was a good candidate for this kind of treatment, and that if he stuck with it, which of course he didn't, but if he had stuck with it, maybe it would, in fact, protect the community from his behavior. And, Your Honor, just to touch on if he had stuck with it, so Mr. Anderson, the disruption in his treatment was because of the first revocation and his incarceration. He restarted treatment at the second term of supervision, and was actively engaging in treatment. We see the letter submitted at the revocation proceeding part of the record from his treatment provider confirming that since he started in September of 2022, he had been actively going to treatment and had not missed a single session. The second point that I do want to highlight about why these two revocation proceedings should have been different is because the contents of the devices and the first revocation were in and of themselves a direct violation of his conditions, because at that time, Mr. Anderson had a condition that prohibited him not just from possessing child pornography as defined in federal law, but any materials, writings, drawings, illustrations, depicting sexually explicit behavior of minors. Judge Crabb did not reimpose that equally broad condition when she imposed the conditions for his second period of supervision. The condition for the second period of supervision prohibited him from possessing child pornography as defined in federal law. Of course, that is not to say that the court can't consider the troubling nature of the contents of these flash drives. Certainly that is a reasonable consideration for the court to make, but the difference in how that violated the conditions, how the conditions were, the timing of those violations, the fact that he had not accessed those materials during this period of supervision the second time around, and certainly not since he had begun engaging in sex offender treatment. Those are some pretty significant factual differences that the court needed to have weighed, and we don't know whether the court weighed those considerations, because what we have is a written order that essentially copies and pastes and echoes the same reasoning that Judge Crabb applied to a different set of circumstances. It doesn't change that these were separate revocation proceedings with different underlying facts, and treating the first as a de facto minimum didn't sufficiently account for those differences. That's simply what we're asking is for this court to send it back to the district court to ensure that that individualized determination is being made here. Do you want to save some time for rebuttal? Yes. Okay. Thank you. Okay. Ms. Duckerman. Good morning. May it please the court, my name is Meredith Dushman, and I do represent the United States in this criminal case. I just want to begin right off the bat by noting that the summary of our supposed concessions on pages one and two of the reply brief is inaccurate. We don't vigorously agree with any of those assertions. We argue in our brief and continue to argue that this report said enough during the hearing to justify both the 18-month prison term and the 30-year term of supervised release. Contrary to the defendant's assertion, the district court did tie its justifications to both the term of imprisonment and supervised release. We continue to maintain that the district court adequately consider the defendant's mitigating arguments and no rewriting of the record is necessary. The district court did not procedurally err, and the revocation sentence and judgment should be affirmed. I just want to note something too right off the bat, given your conversation with defense counsel. The devices couldn't be accessed because they were taken. They were taken by visits, and he was caught with the devices, and they were found after he repeatedly lied about having them, so yeah, they were taken, so he couldn't access them after that. I don't think that's really a winning point for him. I want to take issue with some of what I think are sort of related narratives that are advanced in the reply brief, and one is the suggestion that the defendant was deprived of treatment, so the violations really aren't his fault, and second is the suggestion that the district court failed to understand that the defendant needed treatment. The defendant was not deprived of therapy, and certainly the court understood that he needed treatment. He was in... Well, apparently he wasn't getting as much treatment when he was incarcerated as he would have been outside. I had that impression. So your honor, it's not in the record what treatment he got when he was incarcerated. I understood him to be arguing that he had been getting all this treatment, he relapses or whatever word you want to use, and then he's put in prison the first time by Judge Crabb for the first 18-month period, and during that period, at least it was my understanding, whether it was just lesser or whether it was nonexistent, it was below the quality of what he was getting outside, and he was trying to convince Judge Conley that this was an illness situation, and so had he been given a chance, he didn't need the reincarceration for a period beyond the recommended Chapter 7 period. Well, your honor, that's the argument that's advanced in the reply brief. That's really not the argument that he tried to make to Judge Conley in the second revocation hearing, and I think you bring up a good point, because I think it's very important when the court is looking at evaluating the appropriateness and the thoroughness of what Judge Conley said, you gotta look at the arguments that were actually made to him, and defense counsel acknowledged all along, revocation was appropriate. In the sentencing memo, defense counsel said that the defendant had an addiction to deviant pornography and asked for a sentence at the low end of the guideline range of three to nine months, citing the defendant's job, family ties, and his amenability or willingness to have treatment, but then at the revocation hearing, defense counsel backed away from that somewhat, and he conceded that his attempts at treatment had been completely failed, and he shifted from recommending a sentence at the low end of the range to saying that something closer to the government's recommendation of a year, or slightly less, was appropriate. Never argued that a longer sentence would be unreasonable or create a sentencing disparity, and he certainly never argued that the defendant relapsed because he was deprived of treatment. And so that's a little bit of a different, and I think there's a number of situations like this, particularly in the reply brief, where the arguments are framed a little bit different here than they were before Judge Conley, and they're emphasized in a much different way than they were before Judge Conley. The majority of the defendant's sentencing memo was focused on convincing the court, which they successfully did, that these images didn't qualify as a new crime. Right, the whole bit about what's obscene versus what's pornography, which is one of those things you don't want to get into if you can avoid it. So, but I had assumed that your position was, when you read what Judge Conley said, he's essentially saying, you know, you're pretty incorrigible, you know, I need to both deter by putting you in prison for a significant amount of time. He didn't see, he didn't see anything less than 18 months as justified. Can you remind me how old a man Mr. Anderson was at the second revocation? I don't, I don't know. I mean, I'm just wondering about the difference between the 20 and the 30 years in real terms as opposed to, I mean, I know there's a 10-year difference, but. Right, and in terms of whether or not he'll be supervised for the rest of his life. Right. I don't have his age off the top of my head. I would, I think he's about my age. It's all right, he's probably in the record somewhere. Mid 40s, 50s, something like that. But I will say with the 30 years, you know, it doesn't excuse procedural error, not that there is any, but there is a pragmatic thing here that obviously if he were to suddenly turn his life around and suddenly start participating in treatment, he certainly could ask the court to, you know, let him off of supervised release early. It doesn't have to be on supervised release for that whole 30 years. It's really up to him whether or not he's on supervised release for that long of a period of time. I hope he isn't. So I did, though, want to go back and address, because I don't think I answered your factual question, Judge, about the sort of process of treatment. There isn't anything in the record about whether or not he received sex offender treatment in the BOP. So that's just a lapse in the record. The defendant said he didn't. I don't have anything to say that he did. Okay, that's fine. I mean, if you don't, you don't, does it? Right. So he had ongoing treatment during the entire first period of supervised release, which was weekly treatments, weekly meetings, and he was on anxiety meds and things like that. So he was getting both sex offender treatment and mental health treatment. And he continued to violate throughout that period of supervised release in the same way he did here. Lying, deceit, not cooperating with treatment, having devices he shouldn't. So then he goes to prison. Then he is let out on home confinement. So he's still technically in BOP custody. If you read the 12C petition for revocation in the supplement, actually the probation officer does a good job of explaining what support he did receive during the period of time of home confinement, and then the transition into formal sex offender therapy, which was with the same provider he had had before. And the probation officer talks about how she would go and visit him during the time that he was in home confinement and made sure that she was reaching out to him and discussing with him if he needed anything to please reach out. And then they find the devices twice. So she finds the devices once, a device in August, and then one mid-September. And then the defendant fails to tell his treatment provider when he then does go to treatment about the devices at all. And then fast forward to November of 2022, and she has to go to the meeting with him to get him to tell the provider about the devices. And then even in January of 2023, the defendant is still not being honest. And he said to them, well, I just was waiting to see what you, I knew you were going to find it anyway. I would have told her eventually. And so I think that that last impression of how he dealt with treatment, even after the devices were found the second time, was really fresh in Judge Conley's mind. It had just, that meeting with the provider in January 2023 had just happened before the revocation hearing. And so not only was the argument not made, gee whiz, Judge Crabb caused my violations because I was deprived of treatment. But had it been made, it would have been a bad argument on this record. So unless the court has any questions, I would ask that the judgment and sentence be affirmed. Thank you. Thank you, Mr. Schuman. Ms. Moreno, we'll give you a minute. I want to just start because it seems like there's a little bit of confusion on the timeline. The devices hadn't been accessed since months prior to Mr. Anderson beginning sex offender treatment in September. That is surely part of the record through the probation violation reports, that he was without treatment for the period of home confinement, the several months he was on home confinement, and up until September of 2022 when he began his sex offender treatment. And that is part of the probation report. The statement that he had not accessed the devices because they were taken, again, the forensic report shows that those contents of the devices had not been accessed for several months prior to the date that they were seized by the probation office. Just to clarify that point. I think a lot of what is happening here is that we are kind of inferring or imposing a reasoning for why what Judge Conley did may have been substantively reasonable. And the court may very well think that it could have been substantively reasonable. But that is not the question that we're dealing with here today. Today, it's the first order question of was this sentence sufficiently explained to allow us to know for certain that Judge Conley didn't treat the first revocation as a de facto mandatory minimum, considered the specifics and the nuances of the case that we're discussing here today, and then we can get to the second order question of whether his decision was reasonable. But until we have that level of explanation, and it needs to be a pretty decently high level of explanation because of the level that he varied from the guidelines policy statements, we can't start engaging in that substantive analysis. Okay. Thank you, Ms. Moreno. Thank you. Okay. Our next case.